## Harner's Appeal.　Bickel's Estate.

1. A. advanced money to B. and took his judgment therefor. The money was advanced on the faith of an entry of satisfaction of a judgment which was prior to A.'s judgment. Upon the application of the equitable assignee of the prior judgment the court struck off the entry of satisfaction. In the distribution of the proceeds of a sheriff's sale of B.'s real estate. *Held*, that A. was entitled to be paid in full before the prior judgment could participate in the distribution.

2. The satisfaction being regularly marked upon the docket, and so marked by the authority of one who, prima facie, had full power so to do, this was all A. was required to look to; it was not his business to inquire about equities to which he was not a party and of which he had no knowledge.

May 21st 1880. Before MERCUR, GORDON, PAXSON, TRUNKEY, STERRETT and GREEN, JJ. SHARSWOOD, C. J., absent.

Appeal from the Court of Common Pleas of *Dauphin county:* Of May Term 1879, No. 157.

Appeal of Frederick D. Harner from the decree of the court distributing the proceeds of the sheriff's sale of the real estate of Tobias Bickel. Before the auditor, John H. Weiss, Esq., the fund arising from the sale was claimed by the holders of two judgments, one in favor of the Lykens Valley Bank for $9000, on bond and warrant entered March 12th 1873, and one in favor of Harner, the appellant, for $3000, on bond and warrant entered August 30th 1875. The auditor found that the judgment of the bank was given to secure existing and proposed discounts. On May 1st 1875, the

[Harner's Appeal.]

Lykens Valley Bank was succeeded by the First National Bank of Millersburg, and the unpaid notes of the former bank were transferred to the national bank, and at maturity these notes were replaced by others and the old notes surrendered.

Doubts arose as to whether the bond given by Bickel to the Lykens Valley Bank was of any validity as a security for the payment of the notes held by the national bank against Bickel. After several conferences, it was arranged between the board of directors of the national bank and Bickel that the latter should give a new bond to the national bank in the sum of $9000, and should be credited on his indebtedness with seventeen shares of the capital stock of the said national bank at the price he paid for it, viz., $115 per share.

This new bond was entered of record, but not until September 11th 1875.

On the 22d of September 1875, Harner obtained a bond with warrant of attorney to confess judgment against Tobias Bickel for the sum of $3000, which bore interest from September 22d 1874, which matured one year thereafter, and upon which judgment was entered August 30th 1875, to No. 51, Nov. Term 1875. Bickel was previously indebted to Harner in the sum of $560, for which the latter held the former's note. Bickel desired to borrow more money from Harner, but the latter declined the loan of any further sum, because of the judgment which the Lykens Valley Bank held against him. Bickel there told him that this judgment would be satisfied. On the day of the date of the judgment, Harner gave Bickel his note in the sum of $2240, which, with the sum of $560 already due from Bickel to him, made up the sum of $3000, the amount of the judgment. He agreed to advance the balance of the money as soon as the bank judgment should be satisfied. He advanced no money to Bickel until he ascertained from the prothonotary that the judgment of the Lykens Valley Bank was satisfied, and, finally, did advance and pay the amount of his note $2240, with interest, when he learned satisfaction was entered. Harner made no inquiry of the bank as to whether the judgment would be satisfied, nor by what authority it was satisfied. He knew it was not satisfied when he took, nor when he entered of record his own judgment. He did not see (for he made no search), that the First National Bank had entered their judgment against Bickel, and he said that if he had noticed this judgment, he would not have given any money, unless he had previously asked the officers of the bank. He did not acquaint the officers of the national bank at any time with the fact that he had not given any money to Bickel at the time he obtained the judgment against him. He said that his judgment was the first, and, therefore, began to advance the money to Bickel.

The judgment given by Bickel to the Lykens Valley Banking Company was marked satisfied by the prothonotary, on September

30th 1875, in pursuance of an authority to him directed by G. M. Brubaker, who was president of said bank, and who continued to act in that capacity during its existence, and of the chartered Lykens Valley Bank until January 1874; and by the direction of S. P. Auchmuty, the attorney for the bank at that time, who suggested the entry of satisfaction as per authority of Brubaker on the back of the certificates.

On the 20th of June 1876, a rule to show cause why the entry of satisfaction should not be stricken off was granted. On the 14th of September 1876, the satisfaction entered was stricken off by the court, but without prejudice to the rights of intervening creditors, and with leave for the defendant, Bickel, to move to vacate the order.

On the 14th of December 1876, the defendant filed a motion to vacate and to reinstate the entry of satisfaction. On December 29th 1876, the court refused the motion, and directed, in an opinion filed the same day, that the order rescinding the satisfaction should stand good, and that the judgment be reinstated, but to be without prejudice to the rights of F. D. Harner or other creditors whose claims can be shown to intervene between the time of entering satisfaction and the application to have the judgment satisfied, and the decision neither to prejudice nor benefit his or their claims, and with leave to the plaintiff to issue execution. Thus the judgment given by Bickel to the First Lykens Valley Bank for $9000 on the 22d of August 1871, and kept in their safe until March 12th 1873, and then entered of record, was satisfied September 30th 1875. The judgment given by Bickel to the First National Bank in the same sum, dated September 1st 1875, was entered of record in Dauphin county, as above mentioned, September 11th 1875.

The auditor, inter alia, reported:

" The bank held a judgment in this large amount unsatisfied, and knowing this, Harner obligated himself to advance the money upon his own judgment when the former should be satisfied. It was the least possible hardship to require of him the exercise of ordinary diligence, both as to search and inquiry, before he made advances, in order to be protected against an unauthorized satisfaction. In order, therefore, to enable Harner to claim any superior right, it was incumbent upon him to ascertain by what authority the judgment of the Lykens Valley Bank was satisfied, and failing in this, he has no standing as a prior claimant upon the fund. Equity will not permit a claim to be predicated upon laches."

The auditor then awarded the fund to the First National Bank upon the old judgment. Harner filed exceptions, when the court, Pearson, P. J., made the following decree:

" And now, to wit, July 13th 1878, it is ordered by the court

that, upon the filing of a recognisance in favor of the Common-wealth for use of F. D. Harner, in the sum of $5000, with two recognisors to be approved by the prothonotary and taken by him, conditioned for the payment to said Harner of such sum as may finally be decreed and adjudged to him after the determination of his appeal to the Supreme Court in this case, upon his judgment No. 51, November Term 1875, entered August 20th 1875, for $3000, the money to be paid out to the distributee, viz.: The First National Bank of Millersburg, Pa., in accordance with the fore-going report."

Harner then took this appeal, and alleged that the court erred in making the above decree and in striking off the entry of satis-faction from the record of the Lykens Valley Bank judgment.

*Fleming & McCarrell*, for appellant.—The court had no right to strike off the entry of satisfaction. The whole controversy was one of fact depending on the testimony of many witnesses who gave conflicting statements, and the court should have sent the question to a jury: Humphreys *v.* Rawn, 8 Watts 78.

We contend that the facts gave Harner an undoubted right, both in law and in equity, to have payment of the amount advanced by him as above stated, before anything could be awarded to the First National Bank, by virtue of the equitable title which it claimed to the Lykens Valley Bank judgment, but which it failed to assert or make known in any way until long after Harner had parted with his money upon the faith of the record showing that the judgment had been satisfied.

The auditor concludes that Harner was bound to acquaint the First National Bank with the arrangement between Bickel and himself before he advanced his money. This was requiring him to do an impossible thing. because there was not a scintilla of evidence to show that Harner knew, or had even had an intimation, that the national bank claimed any interest in the judgment until long after he had loaned money to Bickel. He obtained the prothono-tary's statement that the judgment was satisfied. He looked at the docket and saw for himself that the judgment was satisfied. The record showed that the judgment was in favor of a partnership. The authority for the entry of satisfaction was the original certifi-cate of the judgment, with direction to satisfy endorsed thereon, and signed by Brubaker, one of the partners. Harner knew that one partner had authority to satisfy the partnership judgment, and that the signature of Brubaker, the partner, was genuine. He was not bound to make further inquiry: Moroney's Appeal, 12 Harris 372; Magaw *v.* Garrett, 1 Casey 322; Goepp *v.* Gortiser, 11 Id. 133.

*J. W. Simonton*, for appellee.—The action of the court in striking off the entry of satisfaction cannot be questioned in this proceeding by Harner. That was a controversy between the bank

and Bickel, and did not concern Harner. The order striking off the entry of satisfaction was made "without prejudice to the rights of intervening creditors," and if Harner is an intervening creditor whose rights are prejudiced by the order, then, as to him, it does not exist; if he is not, he has no interest in the matter.

There is no chance for the operation of any principle of equity in Harner's favor, for the reason that at no time when he did anything in the matter, had he even an apparent lien prior to that of the bank. Thus, when he took and entered his judgment and gave his note, August 30th 1879, the lien of the first $9000 judgment of the bank was in full force, standing untampered with upon the record. Again, when he advanced the money on this judgment, October 11th 1875, and thereafter, the lien of the second $9000 judgment held by the bank was in full force, and patent upon the record. Hence, when he took the judgment and gave his note, he had full notice of a prior lien; and when he actually paid the money he had the same.

Harner, therefore, obtained his lien when he took and entered his judgment against Bickel, and gave his note to Bickel for the amount to be advanced, viz.: August 30th 1875, and as at this time the first judgment for $9000 in favor of the appellee stood in full force, he took subject to it. This being so, he could not gain priority over it, by virtue of the fact that it was afterwards, without the knowledge or consent of the appellee, marked satisfied on the record. This would be, not to commit a fraud himself, but to take advantage of the fraud of another.

Further, when Harner actually made the advances, which was not until October 1875, and afterwards, the second $9000 judgment of appellee had been entered, namely, on September 11th 1875. Hence, if his lien is to date from the time the advances were actually made, they were made subject to the lien of this second judgment, and then the principle also referred to in Taylor v. Cornelius, 10 P. F. Smith 196, as settled by Ter Hoven v. Kerns, 2 Barr 96, and Bank of Montgomery County's Appeal, 12 Casey 170, will apply, that where a lien is taken to secure future advances, but the lien creditor is under no contract to make the advances, the lien dates from the actual advance of the money.

Mr. Justice GORDON delivered the opinion of the court, June 21st 1880.

The original Lykens Valley Bank, to which Bickel executed the judgment, which forms the subject of the present controversy, as collateral security for certain notes which it discounted for him, was a partnership, and of this partnership Brubaker was not only a member, but president. Prima facie, therefore, he, as agent of this association, had full power either to assign or satisfy this judgment: Dubois's Appeal, 2 Wright 231. Harner's judgment, in amount $3000, was entered on the 30th of August 1875, and

had been executed in September 1874. The consideration, there-for, was an account owing by Bickel to Harner, amounting to $560, and Harner's note for $2250, payable as soon as payment might be required after the Lykens Valley Bank judgment should be satisfied, but not before. This note, as appears from the audit-or's report, was fully paid, according to the agreement of the par-ties, though not until after the 11th of September 1875, the date of the entry of the appellee's judgment. This latter circumstance, however, is of no account, since Harner's note and previous ac-count were sufficient consideration for his judgment: Moroney's Appeal, 12 Harris 372. Now, as soon as the judgment of the Lykens Valley Bank was satisfied that of Harner stood first, and the appellee, finding the lien of its judgment thus outranked, made application to have the satisfaction, just spoken of, taken off, on the ground that that judgment belonged to it as the successor to the rights and obligations of the former Lykens Valley organiza-tion. To this proceeding Harner could not lawfully object; that was a matter for the parties themselves; they, without the court's interposition, could have taken off this satisfaction, but whether taken off by themselves or by the court, the status of Bickel's judgment was not affected thereby. As to him, the satisfaction remained, and it should so have been treated by the court below. The auditor, singularly enough, fell into the error of supposing it to be Harner's duty to make inquiry of the First National Bank, the appellee, as to its claims to the old judgment, but as that bank had, in fact, no assignment of that judgment marked on the record,· it was certainly not Harner's duty to make inquiries about secret equities of which he had no knowledge. There was the satisfac-tion regularly marked upon the docket, and so marked by the au-thority of one who, prima facie, had full power so to do. This was all Harner was required to look to; it was not his business to inquire about rights and equities to which he was not a party and of which he had no knowledge: Springfield Building and Loan Association's Appeal, MS. If the appellee desired to give notice of its rights, and put the old judgment beyond the power of the partners of the original association, it should have taken an as-signment and put that assignment on the docket. The duty rested with it to see to its own judgment, that it was properly pre-sented on the record, and failing in this, it must bear the conse-quences of its own neglect; it cannot cast them upon one who is in no default: Ridgway, Budd & Co.'s Appeal, 3 Harris 177. It is clear, therefore, that Harner's right to the money, now in the court below for distribution, is superior to that of the appellee, and that the decree of the court below was erroneous.

The decree of the court below is now reversed and vacated, at the costs of appellee, and a re-distribution is ordered according to the principles stated in the above opinion.