ALLEGHENY V. R. CO. v. C. C. DICKEY ET AL.

APPEAL BY PLAINTIFF FROM THE COURT OF COMMON PLEAS
NO. 1 OF ALLEGHENY COUNTY.

Argued October 31, 1889—Decided January 6, 1890.
[To be reported.]

1. When judgments have been obtained against the maker and indorser
for the amount of a promissory note, and a third person, who has be-
come bail for stay of execution in the judgment against the maker,
pays it at the expiration of the stay, he acquires thereby no equity to
be subrogated to the rights of the plaintiff, in the judgment against the
indorser; on the contrary, he would be liable to the indorser if the lat-
ter were obliged to pay the debt.
(a) One who was both bail for stay of execution in a judgment against
the maker of a note and at the same time, as administrator of the indorser,
was defendant in another judgment for the same debt, paid the former
judgment, whereupon both were marked satisfied. Seven years after,
and eight years subsequent to the death of the decedent, he petitioned
the court to cancel the satisfaction of the latter judgment and mark it
for his use.
(b) His petition alleged an agreement between the plaintiff and himself
for the assignment of the latter judgment to him and that the satisfac-
tion thereof was entered by mistake. On the return day of a rule to
show cause, served upon the plaintiff, to which no answer was made,
the court, without receiving any proof in support of the petition, struck
off the satisfaction and marked the judgment for the use of the petitioner,
who thereafter assigned it to his counsel.
(c) Subsequently the assignee issued a scire facias against the heirs of
the decedent, who were the petitioner and his children, obtained judg-
ment by default, and thereunder levied on and purchased at sheriff's
sale certain real estate. A creditor of the decedent soon after recovered
judgment in a suit commenced within five years after his death and
duly prosecuted, levied upon the same land, bought it at sheriff's sale
and brought ejectment therefor.
2. The petitioner in such case never had a right to subrogation upon the
facts stated in the petition, but even if he originally had such an equity
it was lost, because any claim at law was barred by the statute of limi-
tations, and an equity will not be enforced at the expense of a legal
right; moreover, the original judgment being satisfied, the claim for
subrogation, first prosecuted more than five years after the decedent's
death, was not enforceable against the intervening rights of the creditor.
3. The petitioner occupying the positions of both plaintiff and defendant
in the proceedings for subrogation, the decedent's creditors were not

properly represented by him in his character of administrator, and for this reason, and because the proceedings taken were both a constructive and an actual fraud upon the creditors, they were not bound by the order of subrogation, and all the proceedings based thereon were void as to them: wherefore the sale to the petitioner's counsel, who had full knowledge of all the circumstances, passed no title as against said creditors.

Before PAXSON, C. J., STERRETT, GREEN, CLARK, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 126½ October Term 1889, Sup. Ct.; court below, No. 466 March Term 1886, C. P. No. 1.

On February 4, 1886, the Allegheny Valley Railroad Company, by John Scott and W. H. Barnes, receivers, brought ejectment against C. C. Dickey and James Verner for certain land in the borough of Verona. The defendants pleaded not guilty.

At the trial on February 24, 1889, the plaintiff showed title to the land in dispute, in William Phillips, deceased, at the time of his death in 1874; an action brought by the Allegheny Valley Railroad Co. against Robert B. Phillips, his administrator, at No. 234 March Term 1876, in the Court of Common Pleas No. 1 of Allegheny county, for an indebtedness alleged to be due from the estate of said decedent to the plaintiff; the recovery in said action, after protracted litigation, of a judgment in favor of the plaintiff for $466,837.36: see Phillips v. Railroad Co., 107 Pa. 465; a scire facias upon said judgment duly prosecuted to judgment against the heirs of the decedent: see Phillips v. Railroad Co., 107 Pa. 472; and an execution, levy and sheriff's sale under the latter judgment, in pursuance whereof the land in dispute was duly conveyed to the Allegheny Valley Railroad Co., the plaintiff. The sheriff's sale was made on June 5, 1885, and his deed to the purchaser was acknowledged September 26, 1885. Having shown these facts, the plaintiff rested.

The defendants offered in evidence the record of an action at No. 233 November Term 1874 of the Court of Common Pleas No. 2, of Allegheny county, the matters shown thereby being in substance as follows:

On September 8, 1874, William Cunningham recovered in

said action, a judgment against Robert B. Phillips et al., administrators of the estate of William Phillips, deceased, for $3,619.22, upon a note drawn by William Phillips, Jr., and indorsed by the decedent, which judgment was satisfied in full upon the record on September 3, 1875, by R. & S. Woods, the attorneys of the plaintiff therein. On May 27, 1882, R. B. Phillips presented his petition to said Court of Common Pleas No. 2, setting forth that at No. 232 November Term 1874, of said court, William Cunningham obtained a judgment against William Phillips, Jr., the maker of the note upon the indorsement of which by said William Phillips, deceased, the judgment against the estate of the latter, at No. 233 November Term 1874 was based; that the petitioner became bail for stay of execution upon said judgment No. 232, against William Phillips, Jr., and at the expiration of the stay allowed by law paid said judgment in full, it being agreed and understood between the petitioner and the plaintiff in said judgment that upon its payment by the petitioner the judgment against the estate of William Phillips, deceased, should be marked for the petitioner's use, but that by inadvertence, and without the consent of said plaintiff and the petitioner, the attorneys of record entered satisfaction in full of both said judgments; praying upon these averments for a rule upon Eliza Jane Cunningham, administratrix of said William Cunningham, who had since died, to show cause why the satisfaction of the judgment against the estate of William Phillips, deceased, should not be stricken off and said judgment marked to the petitioner's use. Thereupon, on motion of Mr. C. C. Dickey, attorney for the petitioner, a rule was granted as prayed for. On June 22, 1882, the rule having been duly served and no answer thereto having been filed, the same was made absolute, the satisfaction stricken off and the judgment marked for the use of Robert B. Phillips. On July 17, 1882, the judgment was assigned to Mr. Dickey.

The offer was objected to: 1. Because the judgment entered against the administrators of William Phillips, deceased, in 1874, in this proceeding, was in 1875 paid and satisfied of record and extinguished. 2. Because the proceedings in this case subsequent to the satisfaction are intelligible only by reference to the entire record therein referred to, to wit: the record at 232 November Term 1874, which it is not proposed here to

offer in evidence, this record being incomplete to explain the transaction.

By the court: Objections overruled; exception.[1]

The defendants then showed by other records that the judgment at No. 233 November Term 1874 was revived at October Term 1882 in favor of William Cunningham for use of C. C. Dickey against Robert B. Phillips, administrator and heir at law of William Phillips, deceased, against the executors of Eliza B. Phillips, deceased, who was an heir at law of said deceased, and against William Phillips, Jr., and others, devisees of said Eliza B. Phillips; that on the judgment so revived execution process was issued, under which the land in dispute was levied on, sold by the sheriff on October 1, 1883, to C. C. Dickey, and conveyed to him by sheriff's deed acknowledged October 30, 1883. Having further put in evidence certain deeds whereby Mr. Dickey conveyed parts of said land to James Verner, his co-defendant in the present suit, the defendants rested.

In rebuttal, the plaintiffs called Mr. Dickey for cross-examination. He testified that he was attorney for Robert B. Phillips in obtaining the order striking off the entry of satisfaction of the judgment against said Phillips as administrator of William Phillips's estate; that the petition and order were drawn by the witness, and also the assignment to himself of that judgment, after the entry of satisfaction had been stricken off; that he was attorney for Robert B. Phillips on many occasions after the death of William Phillips; that on several occasions the witness transacted business for him as the administrator of the estate of William Phillips, deceased, though in so doing he merely represented Mr. George Shiras, Jr., who was the administrator's counsel and in whose office the witness was employed at the time as clerk and assistant; that the witness was the attorney of William Phillips, Jr., and James B. Phillips, who were sons of Robert B. Phillips and as devisees of Eliza B. Phillips were interested in the estate of William Phillips, deceased; and he was aware of the progress of the litigation between the Allegheny Valley R. Co. and the estate of William Phillips, deceased, was familiar with the financial condition of said estate, and knew that it was insolvent.

At the conclusion of the testimony the court, STOWE, P. J.,

instructed the jury to return a verdict in favor of the defendants.[2]

The jury rendered a verdict for the defendants accordingly, and judgment was entered thereon; whereupon the plaintiff took this appeal, assigning for error:

1. The admission of defendants' offer.[1]

2. The direction of the court to find for the defendants.[2]

*Mr. William R. Blair* (with him *Mr. John H. Hampton*, *Mr. William Scott* and *Mr. George B. Gordon*), for the appellant:

1. The sale to C. C. Dickey, founded upon the alleged judgment to the use of Robert B. Phillips, assigned to Mr. Dickey, passed no title. The proceedings subsequent to the satisfaction of that judgment are invalid, because the record shows that Robert B. Phillips not only had no right of subrogation therein, but had no claim at all against his dead brother's estate. Instead of his being entitled to subrogation against the estate of William Phillips, deceased, the estate, if it had paid this debt of William Phillips, Jr., would have been entitled to subrogation against the bail for stay of execution: Burns v. Huntingdon Bank, 1 P. & W. 395; Armstrong's App., 5 W. & S. 352; Lathrop's App., 1 Pa. 512; Wallace's Est., 59 Pa. 406; Bender v. George, 92 Pa. 36. Moreover, the stay of execution against William Phillips, Jr., released the real estate of William Phillips, deceased, from its liability as surety: Pott v. Nathans, 1 W. & S. 155; Schnitzel's App., 49 Pa. 23; Reiner v. Rodgers, 2 W. N. 16; Commonwealth v. Miller, 8 S. & R. 457; Yeager's App., 19 W. N. 151; Boschert v. Brown, 72 Pa. 372.

2. The judgment assigned to Mr. Dickey, even if a lawful claim against William Phillips's estate, was no lien upon his real estate. The limitation contained in § 24, act of February 24, 1834, P. L. 77, applies in favor of heirs, legatees and subsequent judgment creditors, as well as bona fide purchasers: Hemphill v. Carpenter, 6 W. 22; Kerper v. Hoch, 1 W. 14; Commonwealth v. Pool, 6 W. 32; Bailey v. Bowman, 6 W. & S. 118; Loomis's App., 29 Pa. 237; Quigley v. Beatty, 4 W. 13. As William Phillips died April 14, 1874, the lien of Robert B. Phillips's alleged claim expired April 13, 1879, not having been secured by judgment, mortgage, suit brought, or claim filed, in

accordance with the provisions of the act of 1834. The Cunningham judgment which had been satisfied and extinguished, was not a judgment securing his claim within the meaning of the act. The order striking off the satisfaction could not, therefore, make the judgment a lien on the real estate, in the face of the prohibition in the act of 1834: McCurdy's App., 5 W. & S. 397; Oliver's App., 101 Pa. 299. That order is not conclusive here: Douglass's App., 48 Pa. 223; Harner's App., 94 Pa. 489.

3. Nor could the subsequent formal judgment on the scire facias make the judgment assigned to Mr. Dickey a lien, the judgment on the scire facias being dependent upon the judgment on which it was founded: Dorrance v. Scott, 3 Wh. 309; Irwin v. Nixon, 11 Pa. 419; Caldwell v. Walters, 18 Pa. 79; Fink v. Mahaffy, 8 W. 384; Bank of Penna. v. Potius, 10 W. 148; Rittenhouse v. Levering, 6 W. & S. 198; Farmers Bank v. Gilson, 6 Pa. 57; Stout v. Stout, 44 Pa. 459. The question of lien was not and could not be adjudicated on the scire facias; the only permissible defence would be disproof of the debt, the lien being a mere incident of the judgment, and the question of lien or no lien being one of property and title: Sample v. Barr, 25 Pa. 457; Hemphill v. Carpenter, 6 W. 22. If a judgment, though just and valid, be no lien, a sale thereunder passes no title, and the purchaser at a sheriff's sale is bound to know the validity of the lien of the judgment under which the sale is made: Brunner's App., 47 Pa. 75.

4. The court erred in not allowing the jury to find from the evidence in the case, whether the proceedings upon the Cunningham judgment, subsequent to the satisfaction thereof, including the sale to C. C. Dickey, were a bona fide attempt to collect the alleged indebtedness on said judgment, or whether they were not rather a scheme for the purpose of hindering and delaying the creditors of William Phillips, deceased, among whom was the Allegheny Valley Railroad Co., in an amount exceeding $450,000. It is a fair inference from the facts, that no thought of subrogation entered into R. B. Phillips's brain until after the claim of the railroad company was put in suit, and that this pretended sale, made to the administrator's confidential legal adviser, upon this pretended legal judgment which was erroneously, and, as we say, fraudulently obtained, was a

deep laid scheme to cover up the real estate of William Phillips, before the plaintiff, by the affirmance of its judgment in this court, became able to levy an execution thereunder.

*Mr. James S. Young* (with him *Mr. W. K. Shiras* and *Mr. West McMurray*), for the appellees:

1. The first objection made to the admission of our offer of evidence, as set out in the first assignment, was bad, because, while the record we offered showed that the judgment had been marked satisfied in 1875, it also showed that the Court of Common Pleas No. 2 had canceled the satisfaction and restored the judgment. The second objection was bad also, because we were not required by any rule of law to offer anything but the proceedings by which we obtained title, and the record at No. 232 November Term 1874, was not a part of them. If it explained or contradicted our record, it was for the plaintiff to offer it in rebuttal. The overruling of the objections made was therefore right.

2. The question now raised by the plaintiff is whether the judgment offered could be attacked collaterally. That this cannot be done, except for fraud, is well settled: McDonald v. Simcox, 98 Pa. 619. The objection made raised no question of fraud. The plaintiff could properly show fraud, if any there was, as a part of its case, but the court could not, at a stage of the proceedings where no fraud was suggested or pretended, set aside the solemn judgment of another court of competent jurisdiction, which decided upon a proper proceeding that Robert B. Phillips was entitled to the subrogation. The heirs could have set up, in the scire facias, a defence that the lien of the debt was lost: Atherton v. Atherton, 2 Pa. 112. That point is adjudicated against them. A stranger to the title cannot raise it: Riland v. Eckert, 23 Pa. 215.

3. The plaintiff was not injured by the admission of our offer, for the door was thrown wide open for the proof in rebuttal of anything that would explain or contradict the judgment. No offer made in the attempt to prove fraud was rejected. The second specification of error raises the question how that attempt succeeded. No fraud is shown. The testimony unequivocally shows that Mr. Dickey was not the administrator's attorney and was in no sense a representative of

the estate. Was the collection of a judgment which the estate owed to Robert B. Phillips, but which had been satisfied by mistake, a fraud? Was it a fraud in Mr. Dickey to collect that judgment after purchasing it for a full consideration? Is it shown that he was under any duty to see that other creditors of the estate were paid before he was? He who asserts fraud must prove it. There was here no evidence of it to submit to the jury.

OPINION, MR. JUSTICE GREEN:

The judgment of William Cunningham against the administrators of William Phillips, deceased, obtained September 8, 1874, was founded upon an indorsement made by the deceased upon a note of his nephew, William Phillips, Jr., a son of Robert B. Phillips. After judgment obtained against both the maker and the indorser, Robert B. Phillips became bail for stay of execution in the judgment against his son. At the expiration of the stay, Robert B. Phillips paid the debt, interest, and costs due on the judgment, and satisfaction was thereupon entered upon both judgments on September 3, 1875.

That the payment of the judgment against the principal debtor was an absolute extinguishment of every possible claim against the estate of William Phillips, the indorser, is too plain for argument. It was long ago decided that if, after judgments are obtained against a principal and surety, a third person interposes, and gives his note for the debt, to obtain a stay of execution for the principal, and the surety is afterwards obliged to pay the debt, he is entitled to have an assignment of the judgment on the note of the third person, to indemnify him for such payment: Pott v. Nathans, 1 W. & S. 155. That case simply followed Burns v. Huntingdon Bank, 1 P. & W. 395; and both of these decisions have been many times approved and followed by this court. In Boschert v. Brown, 72 Pa. 372, we held that the equities of a surety exist after the liability of both himself and principal is fixed, both before and after judgment; that in Pennsylvania a judgment against principal and surety does not extinguish the relation between them; and, if creditors after judgment give time to the principal, the surety is discharged. In the case of Wallace's Est., 59 Pa. 401, we said: " It has accordingly been held that a mere volunteer, who

without any moral or legal obligation, pays the debt of another, is not entitled to subrogation, to the prejudice of the intervening rights of others: Hoover v. Epler, 52 Pa. 524. Nor is one who becomes surety of a defendant in a judgment, for stay of execution, and afterwards pays the judgment, entitled to a cession of the judgment, so as to have priority to subsequent judgment creditors." In Schnitzel's App., 49 Pa. 23, we held that if, after judgment against two, one of whom is surety, a third person at the request of the principal, becomes bail for stay of execution, and on the expiration of the stay the surety be compelled to pay the judgment, he is entitled to subrogation, and may recover therein against the bail. The same doctrine is held in many other cases, which it is not necessary to cite.

It will be seen, then, that instead of Robert B. Phillips having any claim whatever against the estate of William Phillips to compel that estate to repay to him the money he paid for his son as bail for stay of execution, he not only had no claim at all, but that if the estate had been obliged to pay the debt, the money could certainly have been recovered of Robert B. Phillips. But Robert B. Phillips did pay the debt, which he was both legally and equitably bound to pay; and not only that, but satisfaction was entered on the judgment against William Phillips in September, 1875. This entry remained until in 1882, when a most amazing proceeding was had. A petition was presented to the court in which the judgment was entered, signed by the same Robert B. Phillips as an individual, alleging that the entry of satisfaction was made inadvertently, and without the consent of the petitioner or the plaintiff, and although it was understood and agreed by the plaintiff and the petitioner that upon payment of the judgment the same should be marked to the petitioner's use. The petitioner prayed that the entry of satisfaction be stricken off, and the judgment marked to the petitioner's use. In that proceeding the petitioner was a defendant in the judgment, as administrator of William Phillips, deceased. He was also seeking to be made use plaintiff in the same judgment, by having the entry of satisfaction stricken off after seven years of acquiescence in it on his part. He was thus seeking to be both plaintiff and defendant in the same judgment, but plaintiff in his personal and

individual right, and defendant in his capacity as trustee for William Phillip's estate. His personal interest was in direct hostility to his duty as trustee. As a matter of course, there was no opposition to the application. The plaintiff had recovered her money, and she cared nothing about it. But the petitioner, who was endeavoring to obtain an interest adverse to his trust, should at least have resigned his trust, and above all things should have taken testimony to prove the truth of his allegations. But nothing of the kind was done. Without a scrap of testimony being taken, the court made the order striking off the entry of satisfaction and marking the judgment to the use of Robert B. Phillips. The rule was entered May 22, 1882; proof of its service on the plaintiff was made on June 22, 1882, and on the very same day the rule was made absolute, and the judgment was marked to the use of Robert B. Phillips. He was now plaintiff and defendant in the same judgment, and, as a matter of course, the subsequent proceedings were entirely harmonious. A scire facias was issued to bring in the heirs who were identical in interest with Robert B. Phillips— in fact, his own children. The property was sold for a trifle to the counsel for Robert B. Phillips, the same person who presented the petition and had the order made.

It is only necessary to say, of such a proceeding as this, that, at the instance of any creditor of William Phillips who was injured by it, it was void for fraud. It is most manifest that the court had no right, even if the facts set out in the petition had been proven, to make the order striking off the entry of satisfaction. Even if the plaintiff and Robert B. Phillips had agreed that upon payment by him of the judgment, it should be marked to his use, such an agreement would not be obligatory upon William Phillips without his consent; and, as there was neither allegation nor proof of any such consent, as a matter of course there was no power in the court to make such an order. But the matter was many times worse than this, when it is considered that there never was a particle of proof that even an agreement was ever made between the plaintiff and the defendant for keeping the judgment open. It was an ex parte order, made without a scrap of proof. When the petition was presented, and the rule to show cause was obtained, the petition had served its only possible purpose. Of course, it

could not be read or used as proof of the facts it recited upon the hearing, and there was no answer of the plaintiff filed, and hence nothing upon which the order could be made. It was simply a void order. As a matter of course, it could never have been made if the estate of William Phillips had been really represented; and herein consists a second ground of fraud on the part of Robert B. Phillips in obtaining a personal judgment in his own favor against the estate of which he was administrator, and that, too, without a particle of proof of any facts which would entitle him to such a judgment. The fraudulent character of the transaction is greatly intensified by the consideration that the real facts of the case were all in utter and absolute antagonism to the right of Robert B. Phillips either to have the entry of satisfaction stricken off, or the judgment marked to his use; and these facts were not only known to himself, but were of his own creation. It is impossible to conceive of any more palpable, manifest, glaring instance of fraud than is here disclosed.

But, as if this were not enough, the application to strike off the entry of satisfaction was not made until long after the lien of the original judgment had expired, and until after the rights of another creditor had intervened. The Allegheny Valley Railroad Co. had brought a suit against the estate of William Phillips, deceased, in December, 1875, within less than two years after his decease, for a very large sum of money, which culminated in a judgment in January, 1883, for upwards of $466,000, after a long and severely contested litigation. That company was in time to acquire a lien against William Phillips's real estate. It was not until 1882 that the present scheme was matured, the result of which, if it was successful, would be to deprive this creditor of all recourse to the real estate of the decedent. The circumstances of the long delay after the entry of satisfaction was made, and the manner in which the plan adopted was hurried through, without any notice to creditors, without proof of any facts, and long after any claim of Robert B. Phillips had become barred by the statute of limitations, would be such strong and persuasive proof of a fraudulent intent in fact, that it is difficult to believe that any jury could resist them, if they had an opportunity to pass upon the case. As a matter of course, the right of subrogation is an equitable

right, and cannot be set up against intervening rights; and, as the present plaintiff had asserted and prosecuted its claim in due season, it cannot be defeated by the application of that doctrine. It is alleged, and not denied, that the claim of the railroad company was adjudged in the Orphans' Court, upon the settlement of the account of Robert B. Phillips as administrator, at over $300,000, in May, 1880. It was two years after this before the scheme for getting rid of that adjudication, as a lien upon the real estate of the decedent, was devised and put in motion. It was seven years after the judgment against Robert B. Phillips, administrator of William Phillips, was discharged by the same Robert B. Phillips, by paying off the judgment against his son for which he was bail for stay; and that satisfaction was entered, presumably by his authority, before the application to strike off the entry of satisfaction was made. It was three years after the statute of limitations had closed against the claim of Robert B. Phillips, if he had ever had one against his dead brother's estate by reason of the payment of his son's debt. In the mean time he had no judgment or mortgage against William Phillips; he commenced no action, and filed no copy of any claim, statement, debt, or demand, against the estate of the deceased within five years; and it is beyond all question that any claim for the direct recovery of the money paid by him was absolutely barred by the statute of limitations.

In the case of Fink v. Mahaffy, 8 W. 384, one Hays obtained judgment against Quiggle, Fink, and Mahaffy, the two former as principals, and the latter as surety; and in 1828 Mahaffy paid the judgment. In 1836 he made application to be substituted to the place of the plaintiff in the original judgment, so that he might recover the amount from Fink. The court below allowed the substitution, but this court reversed the order, and said: " Moreover, his demand is barred by the statute of limitations; and if the doctrine of substitution is one of mere equity and benevolence, as it has been said to be, it will not be enforced at the expense of a legal right. The substitution was therefore improvident. Order reversed, and assignment of the judgment stricken out." This doctrine has been many times followed, and never questioned. In the case of Bank of Penna. v. Potius, 10 W. 148, we said, of a similar application: " But

be this as it may, yet there are objections to the substitution claimed, arising in this case out of the act of limitations, which cannot, as I can perceive, be surmounted. The money, as clearly appears, was paid by the indorsers to the bank more than five years before the attempt at substitution; and this, of itself, forms a good defence for the sureties on the sheriff's bond. That a substitution cannot, under such circumstances, be permitted, is ruled in Fink v. Mahaffy, 8 W. 384. The doctrine of substitution, being one of mere equity and benevolence, will not be enforced at the expense of a legal right. A surety, therefore, as is there held, whose claim against his principal for money paid on a judgment against them has been defeated at law, cannot be substituted for the plaintiff in the original judgment. On the same principle, he cannot be substituted where his claim is barred by the act of limitations. It would be unjust to deprive the sureties of a defence which would be available if the indorsers are put to a suit on the sheriff's bond." In Rittenhouse v. Levering, 6 W. & S. 198, we said: "Where the surety has done no act, before his claim is barred at law, manifesting his intention to put himself in the place of the original creditor and thereby subrogating himself to his rights, the remedy is only for money paid. Where he has omitted to bring suit in proper time, or to do some act equivalent thereto, he cannot afterwards be subrogated to the rights of the creditor." It is not necessary to continue the citations. The same doctrine was applied in Farmers.Bank v. Gilson, 6 Pa. 57, and Stout v. Stout, 44 Pa. 459.

It is perfectly manifest, therefore, that, had the attention of the learned court below been drawn to the question as to the right of Robert B. Phillips to the subrogation which he asked, it must necessarily have been refused. But the present plaintiff was not a party to that proceeding, and had no day in court to interpose an objection. It certainly cannot, however, be deprived of its rights in consequence of that circumstance; and we so held in Douglass's App., 48 Pa. 223. In that case a decree of subrogation was obtained by a surety within two years after he paid the debt, but not until one day after the sheriff's sale of the land under a prior judgment. The money was claimed under the decree. We said: "It is insisted, however, that the decree of the court, ordering the subrogation of Wat-

son to the rights of Coulter, was conclusive upon the auditor, and also upon all claimants to the fund for distribution. But of what was it conclusive ? Not, surely, of the claim that Coulter's judgment was a lien upon the land of McMasters when the sheriff's sale was made. It was, no doubt, an adjudication that Watson had a right, as against his principal, to use the judgment; but it gave him no right at law. Notwithstanding the decree, he was but the holder of an equity. The decree of subrogation is only a form. It is the right to subrogation which is the substance. After the 1st of February, 1864, Watson was therefore in no better situation than he was before. His equitable right was liable to postponement, because of his laches, as fully as if subrogation had never been decreed. Consequently an award of the fund in court was no attack on what the court had done. It left the decree of subrogation untouched; hence there was nothing to preclude the appellant from asserting his claim to the fund in preference to any equitable claim of Watson." So, here, although Robert B. Phillips had no right whatever to his decree of subrogation in any possible point of view, both on account of his laches and on account of this absence of any meritorious claim, yet, without disturbing the decree, it is only necessary to hold that it cannot be used to displace the rights of a bona fide, legitimate creditor, who had asserted his rights as vigorously and as rapidly as the law permitted. In the same line is Harner's App., 94 Pa. 489, in which we held that where A. advanced money to B. taking his judgment therefor, and there was an entry of satisfaction upon a previous judgment, and upon the application of the equitable assignee of the previous judgment the court struck off the entry of satisfaction, that this would not defeat the right of A. to the proceeds of the sheriff's sale, as against the prior judgment. The satisfaction being regularly marked upon the docket, and so marked by the authority of one who, prima facie, had full power to do so, this was all A. was required to look to. It was not his business to inquire about equities to which he was not a party, and of which he had no knowledge.

It is said in the present case that, after the order of subrogation was made, the judgment was assigned to Mr. C. C. Dickey, and it is assumed that he had rights as an innocent assignee. It is scarcely necessary to say that this claim is not worth a mo-

ment's thought.    There was no proof that he ever paid a penny for the assignment; and, if he had paid valuable consideration, it would not have helped the claim a particle.    He was most fully acquainted with all the particulars of the transaction, both in his character as counsel for Robert B. Phillips as administrator, and also in his character as counsel for Mr. Phillips as an adverse litigant to himself as trustee.    In the case of Wilhelm's App., 30 Pa. 478, this court so fully exposed the effect of the acts of one who was an executor of a decedent, setting up, and attempting to carry through the courts, an agreement in which he was privately interested against his duty as executor, that a mere reference to the case is sufficient.    There the executor was not nominally a party to the litigation, adversely to himself as executor.    But here he is.    He is both plaintiff, as an individual, and defendant, as the legal representative of the estate against which he sought to obtain a decree for his own benefit.    Such a situation is absolutely intolerable, and we have no hesitation in pronouncing the order of subrogation as absolutely void for fraud in fact, as well as for constructive fraud. Worse than all this, it had no kind of merit upon which it could stand for a moment..  Both the assignments of error are sustained.

Judgment reversed, and new venire awarded.